# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

AMERICAN CORN GROWERS ) 
ASSOCIATION, ) 
 ) 
           Plaintiff ) 
      v. )    C. A. No.  07-100-SLR
 ) 
MONSANTO COMPANY, ) 
 ) 
           Defendant. ) 

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
## DEFENDANT MONSANTO'S MOTION TO DISMISS

Jeffrey S. Goddess (Del. Bar No. 630)
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE  19899
Telephone: (302) 656-4433
jgoddess@rmgglaw.com

Attorneys for Plaintiff


(Additional counsel on signature page)

April 9, 2007

## TABLE OF CONTENTS

**PAGE**:

TABLE OF CITATIONS                                                                                   ii

NATURE AND STAGE OF THE PROCEEDINGS                                                  1

SUMMARY OF ARGUMENT                                                                       2

STATEMENT OF RELEVANT FACTS                                                              3

ARGUMENT                                                                                          4

I.      LEGAL STANDARDS                                                                       4

II.     THE ACGA HAS STANDING TO ASSERT THESE                               6
        CLAIMS

        A.      The ACGA Is Not Seeking To Sue In Its                                      6
                Own Right

        B.      The ACGA Has Standing To Bring This                                        8
                Action On Behalf Of Its Members

        C.      Alleged Intra-Organizational Conflict Is                                   11
                Not A Basis To Deny Standing

        D.      There Is No Basis To Allow Monsanto To                                   16
                Take Jurisdictional Discovery

III.    VENUE IS PROPER IN THIS DISTRICT                                              17

        A.      The Forum Selection Clause In The Monsanto                               17
                Technology Agreement Does Not Cover This
                Action

CONCLUSION                                                                                      20

## TABLE OF CITATIONS

| CASE: | PAGE: |
|---|---|
| *2006 Woodley Road Joint Venture v. ITT Sheraton Corp.*,<br>369 F.3d 732 (3d Cir. 2004) | 8 |
| *Adkins v. Runsfeld*,<br>450 F.Supp.2d 440 (D.Del. 2006) | 4 |
| *American Insurance Assn. v. Selby*,<br>624 F.Supp. 267 (D.D.C. 1985) | 10 |
| *Armco, Inc. v. N. Atlantic Ins. Co.*,<br>68 F.Supp.2d 330 (S.D.N.Y. 1999) | 19 |
| *Associated General Contractors of America v.*<br>*Metropolitan Water District of So. California*,<br>159 F.3d 1178 (9th Cir. 1998) | 9 |
| *Associated General Contractors of California v.*<br>*California State Council of Carpenters*,<br>459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) | 6, 7, 8 |
| *Associated General Contractors of California v.*<br>*Coalition for Economic Equality*,<br>950 F.2d 1401 (9th Cir. 1991) | 12, 13 |
| *Associated Gen. Contractors of Conn., Inc. v.*<br>*City of New Haven*,<br>130 F.R.D. 4 (D. Conn. 1990) | 14, 15 |
| *Associated General Contractors of North Dakota v.*<br>*Otter Tail Power Company*,<br>611 F.2d 684 (8th Cir. 1979) | 15 |
| *Baker v. Carr*,<br>369 U.S. 186 (1962) | 15 |
| *Builders Assn. of Greater Chicago v. City of Chicago*,<br>170 F.R.D. 435 (N.D. Ill. 1996) | 14 |

ii

*Building and Construction Trades Council v.*
    *Downtown Development, Inc.*,
    448 F.3d 138 (2d Cir. 2006)                                 9

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
    479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986)        7

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*,
    709 F.2d 190 (3d Cir.), *cert. denied*,
    464 U.S. 938 (1983)                                   19

*Contractors Association of Eastern Penn. Inc. v.*
    *City of Philadelphia*,
    945 F.2d 1260 (3d Cir. 1991)                       13, 15, 16

*Cottman Transmission Systems, Inc. v. Martino*,
    36 F.3d 291 (3d Cir. 1994)                            19

*Dardovitch v. Haltzman*,
    190 F.3d 125 (3d Cir. 1999)                           19

*Farmland Industries, Inc. v. Frazier-Parrott Commodities, Inc.*,
    806 F.2d 848 (8th Cir. 1986)                        19

*Hospital Council of Western Pennsylvania v. City of Pittsburgh*,
    949 F.2d 83 (3d Cir. 1991)                          4-5, 9

*Humane Society of the United States v. Hodel*,
    840 F.2d 45 (D.C. Cir. 1988)                     9, 10, 12-13

*Hunt v. Washington State Apple Advertising Commission*,
    432 U.S. 333 (1977)                              8, 13

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)                                7

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    452 F.Supp.2d 555 (D.Del. 2006)                   5, 6

*Intel Corp. v. VIA Technologies, Inc.*,
    319 F.3d 1357 (Fed. Cir. 2003)                     19

*Kline v. First Western Government Securities, Inc.*,                                    17
    1996 WL 122717 (E.D.Pa. March 11, 1996)

*Lauro Lines S.R.L. v. Chasser*,                                    19
    490 U.S. 495 (1989)

*In re Lucent Technologies, Inc. Securities Litigation*,                                    17
    2002 WL 32815233 (D.N.J. July 16, 2002)

*McCarthy v. Recordex Service, Inc.*,                                    7
    80 F.3d 842 (3d Cir. 1996)

*Mehl v. Canadian Pacific Railway*,                                    17
    216 F.R.D. 627 (D.N.D. 2003)

*Mid-West Paper Products Co. v. Continental Group*,                                    7
    596 F.2d 573 (3d Cir. 1979)

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,                                    20
    473 U.S. 614 (1985)

*Mortensen v. First Federal Sav. and Loan Assn.*,                                    5
    549 F.2d 884 (3d Cir. 1977)

*National Association of College Bookstores, Inc. v.*                                    13-14
    *Cambridge Univ. Press*,
    990 F.Supp. 245 (S.D.N.Y. 1997)

*National Maritime Union of America, AFL-CIO v.*                                    12, 13
    *Commander, Military Sealift Command*,
    824 F.2d 1228 (D.C. Cir. 1987)

*NCAA v. Califano*,                                    5, 14, 15
    622 F.2d 1382 (10th Cir. 1980)

*Oceanport Industries, Inc. v. Wilmington Stevedores, Inc.*,                                    10
    636 A.2d 892 (Del. 1994)

*Ostrofe v. H.S. Crocker Company, Inc.*,                                    7
    740 F.2d 739 (9th Cir. 1984)

*Penn. Psychiatric Society v. Green Spring Health Services, Inc.*,
    280 F.3d 278 (3d Cir. 2002)      4

*Pennell v. City of San Jose*,
    485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988)      9

*Polaroid Corp. v. Disney*,
    862 F.2d 987 (3d Cir. 1988)      14, 15

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F.Supp. 450 (D.N.J. 1997)      17

*Retail Industry Leaders Association v. Fielder*,
    475 F.3d 180 (4th Cir. 2007)      13

*Retired Chicago Police Assoc. v. City of Chicago*,
    76 F.3d 856 (7th Cir. 1996)      5, 13

*Simon v. Eastern Kentucky Welfare Rights Org.*,
    426 U.S. 26 (1976)      15

*Smith v. Lucent Techs., Inc.*,
    2004 U.S. Dist. LEXIS 4074 (E.D.La. March 15, 2004)      19

*Telcordia Tech, Inc. v. Telkom SA, Ltd.*,
    458 F.3d 172 (3d Cir. 2006)      19

*The Jayson Co. v. Vertical Mkt. Software &*
    *Vertical Software Servs.*,
    2006 U.S. Dist. LEXIS 30638 (D.N.J. May 18, 2006)      19

*UAW v. Brock*,
    477 U.S. 274, 106 S.Ct. 2523 (1986)      13

*United States v. Local 560*,
    974 F.2d 315, (3d Cir. 1992)      8

*In re Warfarin Sodium Antitrust Litigation*,
    214 F.3d 395 (3d Cir. 2000)      7

*Warth v. Seldin*,
    422 U.S. 490, 95 S.Ct. 2197,
    45 L.Ed.2d 343 (1975)      4

Plaintiff American Corn Growers Association ("ACGA) submits this answering brief in opposition to defendant Monsanto Company's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## NATURE AND STAGE OF THE PROCEEDINGS

In its antitrust complaint, the ACGA seeks a declaratory judgment and to enjoin Monsanto from committing further violations of the antitrust laws, specifically with regard to its unlawful scheme to overcharge the members of the ACGA for their purchases of the herbicide Roundup. In its motion to dismiss, Monsanto does not challenge the legal sufficiency of any of the claims asserted under federal antitrust law, nor the convenience of the District of Delaware as the forum. Instead, it argues that this action should be dismissed because of a "forum-selection clause" in Monsanto's "Technology Agreements" that farmers are required to sign as a condition of buying an entirely different product – seeds with Monsanto genetically modified seed traits. Monsanto also argues that the ACGA lacks standing to bring this action.

Monsanto's motion to dismiss[1] is without support in either fact or law, and should be denied. As to the forum issue, Monsanto makes the same argument that it raised against Plaintiffs in *Pullen Seeds and Soil v. Monsanto*, C.A. No. 06-599-SLR, *Wade Farms et al. v. Monsanto*, C.A. No. 06-600-SLR, *Sombke v. Monsanto*, C.A. No. 07-122-SLR, and *Century Acres, Inc. v. Monsanto*, C.A. No. 07-123-SLR, and it is incorrect here for similar reasons. With regard to the issue of standing, Monsanto misapprehends the applicable law, and simply puts before the Court a fanciful construct of alleged hearsay "facts" strung together from various websites. The ACGA's standing to bring this

---

[1]     Monsanto's motion to dismiss will be cited as "Mtn. at __." The declaration filed with Monsanto's motion will be referred to hereafter as the "Rosenthal declaration," while the exhibits to the Rosenthal declaration will be cited as "Decl. Ex. ___."

1

action is well-established. It is apparent that Monsanto is attempting to establish a pretext to go on a fishing expedition in order to intimidate and harass the members of the ACGA. Accordingly, even if the Court were not to deny Monsanto's argument out of hand, its overbroad discovery requests should be denied because they are legally irrelevant.

## SUMMARY OF ARGUMENT

1.      Monsanto's "more direct victim" analysis is inapplicable to this action because the ACGA seeks injunctive and declaratory relief under § 16 of the Clayton Act, and not damages under §4.

2.      The ACGA has standing to pursue this action. As purchasers of Monsanto's Round-up herbicide, the ACGA's members have standing to sue in their own right, the ACGA's goals in this litigation are directly pertinent to one or more of its organizational purposes, and the claims for injunctive and declaratory relief do not require the participation of individual members of the ACGA in this lawsuit.

3.      Monsanto's allegation of a disqualifying intra-organizational conflict is both spurious and without legal merit, as the ACGA voted to undertake this lawsuit in a manner consistent with its rules and procedures.

4.      No jurisdictional discovery is required. The discovery Monsanto seeks is irrelevant to the legal questions before the Court.

5.      Monsanto's claim that this matter should have been brought in Missouri, based on a forum selection clause contained in seed Technology Agreements signed by some of the ACGA's members, is belied by the plain language of that clause, which clearly does not encompass the ACGA's claims regarding herbicide. Moreover, the clause

2

is contrary to public policy and its enforcement would waste judicial and litigant resources.

## STATEMENT OF RELEVANT FACTS

ACGA is one of the nation's largest non-profit voluntary membership farming organizations, representing nearly 10,000 farmers in 35 different states. Cmp. ¶2;[2] Decl. Ex. 12 at 1. The overarching organizational purpose of the ACGA is to promote the interests of farmers throughout the nation. *See* Cmp. ¶¶ 2 ("Since its inception in 1987, ACGA has worked to improve conditions for the American farmer and protect rural communities."); 3; 15; Decl. Ex. 12 at 1 (same). Among the objectives and purposes of the ACGA set forth in its by-laws are "[t]o promote and protect the interest of corn growers in the United States," and "[t]o foster improvements of the conditions under which corn is produced and sold." Aff. Ex. 1 at ¶¶ B, C, H. ACGA advocates on behalf of its farmer-members on issues including seed patents and genetically-modified organisms. Cmp. ¶15; Decl. Ex. 12 at 2, 3 (from the ACGA website: "Farmers require, demand, and deserve open and fair competition when buying their input supplies and when selling their harvest.").[3] ACGA members

---

[2]    The ACGA Complaint will be hereafter cited as "Cmp. ¶___." The accompanying Affidavit of Roger Bolin, Esq., will be cited as "Aff. ¶___" while the ACGA by-laws attached to that affidavit as an exhibit will be cited as "Aff. Ex. 1."

[3]    Monsanto imagines a conflict among ACGA members, and dresses up its groundless speculation by quoting hearsay from third-party websites of questionable provenance. For instance, the internet source for Monsanto's assertion that "the ACGA . . . has a Politburo-style structure," Mtn. at 6-7, also characterizes Consumers Union, publisher of Consumer Reports, as well as the Sierra Club and the Union of Concerned Scientists, as being among "the usual anti-capitalist suspects." Monsanto's willingness to actually rely on this kind of information as the core of its argument speaks volumes about the merits of its position. Tellingly, Defendant's citations to the ACGA website contain no direct quotations to support the characterizations made by Monsanto about the organization in the motion to dismiss, and in fact a review of that website supports the positions asserted by Plaintiff herein.

3

purchased Roundup for commercial agricultural purposes at non-competitive and artificially inflated prices. Cmp. ¶ 15.[4] Those prices were the end product of Monsanto's anti-competitive agreements and monopolistic conduct, which are set out in more detail in the Complaint. Cmp. ¶¶ 81, 87. Monsanto's improper conduct and continuing violations of federal and state antitrust laws have caused or threaten to cause injury to ACGA's members who have paid, or will in the future pay, artificially inflated and non-competitive prices for Monsanto's glyphosate products. Cmp. ¶¶ 2, 83, 90, 97.

**ARGUMENT**

## I.    LEGAL STANDARDS

Under Fed. R. Civ. Pro. 12(b)(6), "[a]s a general matter, a court may not consider matters outside the pleadings when adjudicating a motion to dismiss." *Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 444 (D. Del. 2006). Similarly, "[f]or purposes of ruling on a motion to dismiss for want of standing [under Rule 12(b)(1)], both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."[5]

---

[4]    Contrary to the allegations in the Complaint, Monsanto claims that "ACGA is an organization dedicated to organic farmers, who do not plant genetically-modified crops such as Monsanto's Roundup Ready Corn and do not use conventional herbicides such as glyphosate in their weed control systems." Mtn. at 6. Later, in support of its argument that this matter should have been brought in Missouri, Monsanto argues that "[a]s growers of genetically-modified seed containing Monsanto's traits, ACGA members . . . had to execute a standard license" which contained a forum selection clause, and which Monsanto argues must bind the ACGA as well. *Id.* at 9-10. Monsanto is apparently unwilling to let its own contradictory factual assertions stand in the way of what it perceives to be a good argument. The Complaint is clear on this point – ACGA members buy Roundup, and have overpaid for it as a result of Monsanto's anti-competitive practices.

[5]    *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206, 45 L. Ed.2d 343 (1975). *See also Penn. Psychiatric Society v. Green Spring Health Services, Inc.*, 280 F. 3d 278, 286 (3rd Cir. 2002); *Hospital Council of Western Pennsylvania v. City of Pittsburgh*, 949 F.2d 83, 86 (3d Cir.

4

Unlike the standard for a facial challenge to standing, which is the same as the Rule 12(b)(6) standard, a court may look outside the allegations of the complaint in assessing a factual challenge under Rule 12(b)(1). *In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555 at 558. However, as the Third Circuit Court of Appeals has made clear, "[a] factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted," that is, not until after the complaint has been answered. *Mortensen v. First Federal Sav. and Loan Assn.*, 549 F.2d 884, 892 n.17 (3rd Cir. 1977). Because Monsanto has not yet answered, the Court's review of the issues which Monsanto seeks to raise would normally be limited to the allegations in the complaint, which must be taken as true and construed in the light most favorable to the ACGA. Those allegations are clearly sufficient to establish the ACGA's standing to bring this action. That said, the "evidence" upon which Monsanto relies in seeking to contest the ACGA's standing is so flimsy and unreliable that its argument on this point should be rejected out of hand. Moreover, with this response, the ACGA is providing the affidavit of its outside counsel, which sets forth the fact that the ACGA, in accordance with its rules, considered the bringing of this action and voted to do so. As discussed below, this is, as a matter of law, sufficient to overcome Monsanto's factual challenge to the ACGA's standing to bring this suit, and thus the motion to dismiss should be denied on all grounds now.

---

1991); *NCAA v. Califano*, 622 F.2d 1382, 1387(10th Cir. 1980); *Retired Chicago Police Assoc. v. City of Chicago*, 76 F. 3d 856, 862 (7th Cir. 1996); *In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 557-58 (D. Del. 2006).

## II.    THE ACGA HAS STANDING TO ASSERT THESE CLAIMS.

### A.    The ACGA Is Not Seeking To Sue In Its Own Right.

Though it is the named plaintiff in this action, the ACGA is not seeking relief for damages to itself, but rather seeks only declaratory and injunctive relief under § 16 of the Clayton Act on behalf of its members who have been harmed (and will be harmed in the future) by Monsanto's illegal acts. *See* Complaint, ¶¶ 82-83, 89-90, and 96-97. Monsanto's argument that the ACGA lacks individual standing, Mtn. at 17-21, is moot.

Monsanto's argument that the ACGA cannot sue in its own right because there are "more direct" victims of Monsanto's illegal activity, Mtn. at 19-21, conflates several legal principles in a way that misconstrues the law. The "more direct victim" analysis is one part of the test for standing in a § 4 damages case, as set forth in *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983). However, because the ACGA does not seek money damages in this action, the "more direct victim" analysis is not controlling. The courts have drawn a clear distinction between the standing requirements for §4 damages claims and §16 injunction claims. Because of various concerns, including primarily the possibility of duplicative monetary awards to multiple plaintiffs, the courts have attempted to limit standing to assert §4 damages claims to only the "most direct" victims. At the same time, the courts have recognized that an injunction against anti-competitive behavior can benefit market participants at all levels, and that there is no threat of duplicative damages awards under these

6

circumstances. Consequently, various factors (including the "most direct victim" test) which apply
to the §4 standing analysis have no place in a §16 case.[6]

The Supreme Court explained the limitations on the *Associated General Contractors* test,
including the "more direct victim" analysis, in *Cargill, Inc. . Monfort of Colorado, Inc.*, 479 U.S.
104, 122, 107 S. Ct. 484, 93 L. Ed. 2d 427 (1986).  There, the Court held that "because standing
under § 16 raises no threat of multiple lawsuits or duplicative recoveries, some of the factors other
than antitrust injury that are appropriate to a determination of standing under § 4 are not relevant
under § 16." *Id.* at 111 n.6.  The Third Circuit Court of Appeals has also noted the limited coverage
of the *Associated General Contractors* test in § 16 situations:

> A section 4 plaintiff's standing is tested by an application of a number of factors
> designed to determine if the asserted damage goes beyond speculation and, that if
> there is cognizable damage, the plaintiff is the appropriate person to assert it for
> antitrust purposes. *Associated General Contractors of California v. California State
> Council of Carpenters* . . . Section 16 is not as demanding . . ."

*In re Warfarin Sodium Antitrust Litigation*, 214 F. 3d at 399 (citing *Mid-West Paper Products Co.
v. Continental Group*, 596 F. 2d 573 (3rd Cir. 1979)).  *See also Ostrofe v. H.S. Crocker Company,
Inc.*, 740 F. 2d 739, 741 (9th Cir. 1984) ("*Associated General Contractors* deals only with the issue
of standing to sue under Section 4.").

Monsanto is trying to take the "more direct victim" component of the *Associated General
Contractors* balancing test and apply it incorrectly.  Monsanto is not utilizing that factor to challenge

---

[6]      This follows logically from the Supreme Court's line of cases discussing antitrust
injury in a way that limits Federal antitrust standing to direct purchasers where damages are sought.
*See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  Nonetheless, indirect purchasers may sue
for injunctive relief. *See In re Warfarin Sodium Antitrust Litigation*, 214 F. 3d 395, 399-400 (3rd Cir.
2000) ; *McCarthy v. Recordex Service, Inc.*, 80 F. 3d 842 (3rd Cir. 1996).

the standing of the members of the ACGA to bring this suit, something that it does not contest.

Instead, it is using it to question whether the members of the ACGA, and not the ACGA itself,

should be bringing this action. The appropriate test for that is set forth in *Hunt v. Washington State*

*Apple Advertising Commission,* 432 U.S. 333 (1977), which the ACGA plainly satisfies.[7]

Monsanto's argument on this point should be denied.

## B.    The ACGA Has Standing To Bring This Action On Behalf Of Its Members.

The test for associational standing is well-established:

In *Hunt v. Washington State Apple Advertising Commission* [432 U.S. 333 (1977)],
the Supreme Court established a three-pronged test for determining whether an
organization may sue in a representative capacity on behalf of it membership. An
organization only has standing if: (1) its members would otherwise have standing to
sue in their own right; (2) the interests it seeks to protect are germane to the
organization's purpose; and (3) neither the claim asserted nor the relief requested
requires the participation of individual members in the lawsuit.

*United States v. Local 560*, 974 F.2d 315, 339 (3d Cir. 1992).[8]   Monsanto challenges the ACGA's

---

[7]    Even if the "more direct victim" test applied, the ACGA has met it. Unlike the union
in *Associated General Contractors*, the ACGA alleges harm directly to its members, who purchase
Monsanto herbicide and who have suffered injury, through higher prices, as a direct result of
Monsanto's antitrust violations. *Compare Associated General Contractors of California, Inc. v.
California State Council of Carpenters*, 459 U.S. at 539. The ACGA does not seek to represent a
third party with whom it negotiates in the course of business, and as to which it is sometimes
adverse, as was the case with the union and the unionized contractors. "The antitrust injury
requirement of the antitrust standing inquiry is analogous to the minimum standing requirement of
a case or controversy within the meaning of Article III, § 2 of the Constitution, while the other
*Associated General Contractors* factors are analogous to the prudential limitations on standing."
*2660 Woodley Road Joint Venture v. ITT Sheraton Corp.*, 369 F. 3d 732, 741 n.10 (3rd Cir. 2004).

[8]    Notably, there is no additional requirement in *Hunt* itself that there be no actual or
potential conflict among an organization's membership in order for the organization to have
standing. Several courts have questioned efforts by defendants to impose such an additional
requirement, as Monsanto has done here. *See infra*.

ability to meet the second prong of the test.[9]

In this case, the ACGA seeks to protect and further the economic interests of its member farmers by obtaining an injunction against Monsanto's anti-competitive behavior. Because the ACGA's goals in this litigation are directly pertinent to its organizational purposes, set forth in the fact section above, it easily clears the low germaneness standard. *See Hospital Council*, 949 F.2d at 88 ("Clearly the interests that the Council seeks to protect here -- the financial interests of members -- are germane to the organization's broad purposes.").

Monsanto's assertion that the germaneness hurdle is "not extremely high" is a study in understatement. In fact, the standard has been characterized by several courts as "undemanding" or even "weak.":

> The Supreme Court's recognition in *UAW* [*v. Brock*] of the[] special
> advantages offered by association suits signals to us the importance of a

---

[9]      As to the first prong of the *Hunt* test, Monsanto does not dispute that at least some of the ACGA's members have standing in their own right to seek relief for Monsanto's illegal, anti-competitive activities relating to its marketing and sales of its herbicide products. Similarly, the ACGA has satisfied the third prong of the *Hunt* test. The ACGA seeks only declaratory and injunctive relief, which do not require the participation of individual ACGA members. *See Hospital Council*, 949 F.2d at 89 ("It is clear that the Council's request for declaratory and injunctive relief does not require participation by individual members. The Supreme Court has repeatedly held that requests by an association for declaratory and injunctive relief do not require participation by individual association members. The Court has distinguished such requests from requests for individual damages for association members.") (citations omitted). *See also Building and Construction Trades Council v. Downtown Development, Inc.*, 448 F. 3d 138 (2nd Cir. 2006) (individual proof not needed from association members where only declaratory and injunctive relief is sought); *Associated General Contractors of America v. Metropolitan Water District of So. California*, 159 F. 3d 1178 (9th Cir. 1998) ("Individualized proof from the members [of the association] is not needed where, as here, declaratory and injunctive relief is sought rather than monetary damages."); *Humane Society of the United States v. Hodel*, 840 F.2d 45, 53 (D.C. Cir. 1988) (suit seeking declaratory and injunctive relief is not of the type that requires participation by individual members, making associational standing appropriate); *Pennell v. City of San Jose*, 485 U.S. 1, 7, n.3, 108 S.Ct. 849, 855, n.3, 99 L. Ed.2d. 1 (1988) (where injunction is only relief sought, participation of individual members is not required).

reading of the germaneness requirement that does not unduly confine the occasions on which associations may bring legal actions on behalf of members and thus significantly restrict the opportunities of associations to utilize their "specialized expertise and research resources" relating to the subject matter of the lawsuit. . . . Thus, in its rationale, *UAW* suggests that it is highly unlikely the second prong of germaneness was meant to set the narrow perimeter of centrality of purpose urged here. Rather, it would seem to require only that an organization's litigation goals be pertinent to its special expertise and the grounds that bring its membership together.

\*                \*                \*

It remains only to note that in thus characterizing the germaneness requirement as mandating mere pertinence between the litigation subject and organizational purpose, we join a number of other courts which, without any detailed analysis of prong two, have declared it undemanding.

*Hodel,* 840 F.2d at 55-56, 58 (citations omitted).[10] *See also American Insurance Assn. v. Selby*, 624 F. Supp. 267, 271 (D. D.C. 1985) ("An association's litigation interests must be truly unrelated to its organizational objectives before a court will declare that those interests are not germane."); *Oceanport Industries, Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 902 (Del. 1994) (the germaneness standard is "weak," such that it bars "only those whose litigation goals and organization's purpose are *totally unrelated*.") (emphasis in original).

Monsanto cannot credibly argue that the ACGA's goals in this litigation are "totally unrelated" to any of its organizational purposes. Instead, it returns to the unreliable and unsubstantiated hearsay that its counsel found on the internet to insist that one of the ACGA's purposes is to oppose "the use of non-organic herbicides and genetically modified seeds." Mtn. at 22. Not only is this untrue, but Monsanto appears to know that it is untrue. As noted previously,

---

[10]    The germaneness requirement is designed to "prevent litigious organizations from forcing the federal courts to resolve numerous issues as to which the organizations themselves enjoy little expertise and about which few of their members demonstrably care." *Hodel,* 840 F.2d at 57. Monsanto, even in its pointless philosophical attacks on the ACGA and its membership, does not allege that the ACGA fits that description.

10

Monsanto has argued, in this very motion, that the ACGA is bound by the technology agreements signed by its members, including roughly half of the farmers on its board of directors. Of course, a farmer only signs these agreements if they intend to grow genetically modified ("GM") crops, which in turn may allow them to use non-organic herbicides like Roundup directly on those crops. Thus, based on information supplied to this court by Monsanto, board members of an organization that Monsanto claims is dedicated to organic farming are buying GM seeds and using Roundup. Monsanto appears untroubled by the glaring inconsistency in its arguments. Fortunately, the court is free to disregard this manufactured dispute, because its resolution is not required to find that this litigation is germane to the ACGA's organizational purposes.[11]

### C.    Alleged Intra-Organizational Conflict Is Not A Basis To Deny Standing.

Monsanto argues that a conflict among the members of the ACGA should deprive the organization of standing to bring this action. Monsanto relies yet again on uncorroborated (and false) hearsay and unsupported assertions to make this point.[12] Moreover, it provides no evidence

---

[11]    Monsanto notes that, in seeking tax-exempt status, the ACGA listed the promotion of "alternative uses of corn and by products"as its primary exempt purpose. This is, of course, entirely consistent with its stated goals of "improv[ing] conditions for the American farmer," Cmp. ¶ 2 and "advocat[ing] on behalf of its farmer-members," Cmp. ¶ 15, which purposes are clearly spelled out in the Complaint, on the ACGA's website excerpt attached to the Rosenthal declaration, *see* Decl. Ex. 12, and the ACGA's by-laws. Aff. Ex. 1. Finding new markets for farmers' crops means that they can make more money in their chosen profession, which would certainly improve their conditions. Ending Monsanto's exploitative practices, thereby lowering farmers' costs, would improve their conditions as well.

[12]    Monsanto argues that "ACGA's organic growers compete directly with ACGA's non-organic growers." Mtn. at 24. The only apparent support for this assertion, found at  ¶ 3 of the Rosenthal declaration, cites an article about the growing resistance of some weeds to glyphosate, for the proposition that such resistance increases costs to conventional farmers, "which in turn benefits organic growers." Decl. ¶ 3. The declaration fails to note that the article makes clear that it is not printed in "a peer review type of publication," and the proposition that glyphosate resistance helps organic growers is nothing more than the author's opinion.

to support its core assertion – that the interests of conventional and organic farmers are necessarily adverse to one another, such that what helps one hurts the other. Even if all of Monsanto's allegations were true, and they are not, they would still be legally insufficient to disqualify the ACGA from proceeding in this action on behalf of its members.[13]

As an initial matter, it is not clear that intra-organizational conflict, even if it exists, is a basis for dismissal. At least two appellate courts have held that it is not. *See Associated General Contractors of California v. Coalition for Economic Equality*, 950 F. 2d 1401, 1408 (9th Cir. 1991) ("We reject the invitation to expand our interpretation of *Hunt*'s third prong to require that no actual or potential conflict exist between the organization's members for several reasons.");[14] *Hodel*, 840

---

[13]     Monsanto's abuse of the facts pervades its pleading and, in particular, the Rosenthal declaration. As should be readily apparent, much of the internet sourcing for this declaration is from organizations long on agenda but short on objective fact. Activistcash.com lists among the "anti-consumer activist groups" to which it is opposed Mothers Against Drunk Drivers, The Humane Society of the United States, the Center for Media and Democracy, and the Center for Science in the Public Interest (the last two funded in part by the Rockefeller Foundation), while the Center for Consumer Freedom, which claims support from restaurants, food companies and an underwhelming "1000 concerned individuals," condemns the United States Centers for Disease Control for stating that obesity contributes to the deaths hundreds of thousands of Americans every year. Similarly, paragraph 14 of the Rosenthal declaration, discussing a page from the ACGA's website, claims that the ACGA's Farmer's Choice - Customer First program "'educates' farmers about the dangers of growing genetically-modified crops." Decl. ¶ 14. This is a gross mischaracterization, which is obvious from a review of the ACGA web page on which Rosenthal relies. Here is what the ACGA page actually says about that program:

> *Our Farmers Choice-Customers First Program* recognizes the uncertainty many farmers are facing over the proliferation of genetically modified (GMO) crops. Although production agriculture has been generally supportive of agricultural biotechnology, we understand that it doesn't help farmers to grow a product that most of our foreign customers refuse to buy and we recognize their concerns.

Decl. Ex. 12 at 4-5.

[14]     The courts in *Associated General Contractors of California v. Coalition for Economic Equality*, 950 F. 2d at 1408-09, and *National Maritime Union of America, AFL-CIO*, 824

12

F.2d at 59-60; *National Maritime Union of America, AFL-CIO v. Commander, Military Sealift Command*, 824 F. 2d 1228, 1232 (D.C. Cir. 1987) ("We conclude for a number of reasons that associational standing does not necessarily depend upon harmony of members interests.").

Even in those circuits where there is some question as to whether an intra-organizational conflict might disqualify an association, such concerns are obviated by proof that the organization followed its internal procedures in deciding to proceed with the lawsuit. *See Retail Industry Leaders Association v. Fielder*, 475 F. 3d 180, 188 (4th Cir. 2007) (rejecting challenge to associational standing where board unanimously approved of lawsuit, even though organization's members, including Wal-Mart, Target and Best Buy, compete vigorously in the retail marketplace); *Contractors Association of Eastern Penn. Inc. v. City of Philadelphia*, 945 F. 2d 1260, 1266 (3rd Cir. 1991) ("The Contractors' position in this litigation is not contrary to the interests of a majority of their members, and there is nothing on this record indicating that they failed to follow their own internal rules before joining this litigation."); *Retired Chicago Police Assoc. v. City of Chicago*, 76 F. 3d 856, 865 (7th Cir. 1996) (Where there are concerns that litigation might harm some members' interests, or that the organization, for this or other reasons will not vigorously pursue the matter, "[t]hese concerns are allayed where the litigation was properly authorized in accordance with the association's procedures."); *National Association of College Bookstores, Inc. v. Cambridge Univ.*

---

F. 2d at 1232-33, noted that the Supreme Court in *UAW v. Brock*, 477 U.S. 274, 106 S. Ct. 2523 (1986), rejected the Secretary of Labor's invitation to overrule *Hunt*, do away with associational standing, and require members to sue under class action procedures. Despite this, Monsanto invites the Court to apply exactly that standard. *See* Mtn. at 4 (arguing that the alleged conflict "precludes the ability of the class to satisfy the requirements of Rule 23(a)(4)"). Both courts also opined that the *Brock* decision, in the words of the *National Maritime* court, "decided that associational standing is not defeated by conflicting member interests." *Associated General Contractors of California California v. Coalition for Economic Equality*, 950 F. 2d at 1409; *National Maritime Union of America, AFL-CIO,* 824 F. 2d at 1232-33.

13

*Press*, 990 F. Supp. 245, 251 (S.D.N.Y. 1997) (Discussing *Polaroid* and noting that "[n]one of these cases suggest that an association's members must unanimously favor the suit or that their interests must be perfectly aligned for associational standing to be present," and that such concerns are vitiated when "the decision to bring suit was made in accordance with the association's normal procedures."); *Builders Assn. of Greater Chicago v. City of Chicago*, 170 F.R.D. 435, 439 (N.D. Ill. 1996) (even if there is an actual conflict, such that litigation threatens to cause financial harm to some organization members, "such a conflict will not preclude associational standing when the organization has properly authorized the litigation in accordance with its own internal procedures."); *Associated Gen. Contractors of Conn., Inc. v. City of New Haven*, 130 F.R.D. 4, 10 (D. Conn. 1990) ("The asserted conflicting interests among AGC members on this issue does not defeat AGC's standing, although success may harm the legal interests of some members. Unanimity among AGC's members is not a requirement for its standing. . . As long as the suit is not in contravention of its purposes nor its by-laws which govern its decision making process, it has standing."). Because the ACGA followed its internal procedures and the board of directors voted to proceed with the lawsuit, Monsanto's challenge to the ACGA's standing based on an alleged intra-organizational conflict ends here. *See* Affidavit of Roger Bolin, Esq. (noting that "the Board of Directors voted unanimously to authorize the ACGA's participation in the above-captioned lawsuit against Monsanto" and that "[t]his authority was given in accord with the relevant procedures and by-laws.").

    Some of the cases discussing this issue, quite unlike the present situation, involved intervention by members against their organization. *See, e.g., Califano*, 622 F.2d at 1391-92 (denying motion to dismiss based on allegations in complaint where member colleges of the plaintiff NCAA were also members of defendant Association for Intercollegiate Athletics for Women);

14

*Associated Gen. Contractors of Conn., Inc.*, 130 F.R.D. at 11 (denying motion to dismiss where board, not membership, voted to initiate litigation, three members of the organization submitted affidavits in support of the defendant's motion to dismiss, and one moved to intervene). Nothing even remotely approaching that situation exists here but, even in the face of such active opposition by organization members, the courts permitted the organization to proceed with the litigation. In *Califano*, one of the only three cases cited by Defendant, the court ***permitted*** the organization to proceed with the lawsuit and found sufficient that, "[t]he amended complaint states that 'NCAA member institutions, meeting in Convention in January, 1976, were formally advised by the NCAA Council of the possible necessity for bringing this action, and voted to adopt the Report of the Council in which such advice was contained.' Favorably construed, this pleading withstands a motion to dismiss." *Califano*, 622 F.2d at 1391-92.[15]

The concern over intra-organizational conflict is primarily one about whether the organization will vigorously pursue the litigation in which it is engaged. *See Contractors Assn. of Eastern Penn., Inc.*, 945 F.2d at 1265-66; *Polaroid Corp.*, 862 F. 2d at 999, citing *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 n.16 (1976), *Baker v. Carr*, 369 U.S. 186 (1962) ("Indeed, the basis for the constitutional requirement that a litigant have a personal stake in the litigation is 'to assure that concrete averseness which sharpens the presentation of issues upon which

---

[15]     The other two cases cited by Monsanto in this argument are distinguishable from the instant case. Some of the association members in *Associated General Contractors of North Dakota v. Otter Tail Power Company*, 611 F. 2d 684 (8th Cir. 1979), were not qualified, and others were not willing, to work on the power plant project whose labor agreement was the subject of the suit, and some members would benefit from working under the agreement while others would be hurt by not being able to do so. *Id.* at 691. The court thereafter noted that the litigation was not germane to the goals of the organization. Similarly, the court in *Polaroid Corp. v. Disney*, 862 F. 2d 987, 999 (3rd Cir. 1988), found that the lawsuit to secure a better selling price for some shareholders was not germane to the goals of the Polaroid corporation, because a business' goals "do[] not normally include protecting shareholders in their relationships with third parties." *Id.* at 999.

the court so largely depends for illumination of difficult . . . questions."). Given Monsanto's claims

about the ACGA's vigorous opposition to the company and its policies, it cannot also be heard to

argue that there is a risk that Plaintiff will fail to aggressively pursue this matter. Indeed, the fact that

Monsanto, the beneficiary of any potential lack of vigilance by the ACGA in the pursuit of this

action, is the one raising this "conflict" is deeply ironic in its own right. As was noted in

*Contractors Association of Eastern Penn.*, there is little chance that any alleged internal conflict

"will affect the adequacy of representation or present a likelihood of a collusive suit that would

deprive the court of vigorous advocacy on all sides of this dispute." *Id.* at 1265. Monsanto's

defamation of the ACGA through the motion should put to rest any concerns the Court might have

that this is a collusive suit.[16]

### D.    There Is No Basis To Allow Monsanto To Take Jurisdictional Discovery.

Monsanto claims that, because it has fabricated an internal conflict, it should be allowed to

interrogate the ACGA's members to see if its baseless allegations are true. This is nothing more than

an attempt to intimidate the ACGA's members.

The incredible breadth of what Monsanto calls the "relevant lines of inquiry" clearly

demonstrates the company's intentions, as they are by no means "limited" or even remotely tethered

---

[16]    Because Monsanto has offered no credible proof of a conflict, neither has it shown
that Plaintiff's counsel face any kind of a conflict in representing both the ACGA and the lead
plaintiffs in the *Pullen* and *Wade* actions. This, like the rest of Monsanto's motion, is an exercise
in misdirection. As is clear from the relief sought in all of these actions – that is, an injunction
ending Monsanto's illegal and anti-competitive practices and, in the *Pullen* and *Wade* matters,
damages for farmers injured by those practices – the interests of these plaintiffs, and concomitantly
their counsel, are completely aligned. Monsanto cannot have it both ways. On page 20 of the
Motion, the company implies that the ACGA and the *Pullen* and *Wade* plaintiffs are *too* closely
aligned. Of course, there is nothing exceptional about the fact that these complaints are similar –
Monsanto has injured farmers across the nation in the same way, and the complaints simply reflect
that fact.

to the ultimate legal determinations before this court. Monsanto cannot be permitted to fabricate an internal conflict, about which it offers no proof, and use that as a lever to invade the ACGA's membership. *Cf. In Re Lucent Technologies, Inc. Securities Litigation*, 2002 WL 32815233 (D. N.J. July 16, 2002) (affirming magistrate's ruling denying defendants' efforts seeking discovery from forty-one named, non-lead plaintiffs); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 503 (D.N.J. 1997) ("'Courts are sharply curtailing inquiries into and attacks on the personal circumstances of plaintiffs who seek to represent a class.' There is a potential for such discovery to be 'harassing and oppressive on representatives who seek to bring meritorious class litigation.'") (quoting Newberg § 3.33, at 3-158-159)); *Kline v. First Western Government Securities, Inc.*, 1996 WL 122717 (E.D. Pa. March 11, 1996) (discovery of absent class members is disfavored); *Mehl v. Canadian Pacific Railway*, 216 F.R.D. 627 (D. N.D. 2003) (denying motion to compel and noting that discovery from absent class members is not generally encouraged due to its potential for harassment).

In any event, no jurisdictional discovery is required. As the case law cited above holds, where, as here, the organizational litigant has followed its normal procedures in approving the lawsuit, the matter of intra-organizational conflict is settled. The discovery Monsanto seeks is of no moment, and must be denied.

## III.    VENUE IS PROPER IN THIS DISTRICT.

### A.    The Forum Selection Clause In The Monsanto Technology Agreement Does Not Cover This Action.

Monsanto argued, in motions to dismiss the *Pullen* and *Wade* complaints, that the forum selection clauses in the Monsanto Technology Agreement signed by those farmers required that their

17

suits be brought in Missouri. The plaintiffs there filed a response in opposition to that assertion, and in the interest of brevity, the ACGA will incorporate that response here.[17] First, it is evident from the plain language of the forum selection clauses themselves, which language was chosen and drafted by Monsanto, that they do not apply to this lawsuit.[18] The text requires that the claim or dispute at issue must involve the Technology Agreement **and** the use of the *seed* or *seed technology* to fall within the ambit of the clause.[19] The ACGA seeks an injunction to prevent future and continuing overcharges by Monsanto for herbicides, not for seeds. The Technology Agreement's forum selection clause addresses claims and disputes concerning the purchase and use of *seeds* – not herbicides. Moreover, other terms in the Technology Agreement, including the section entitled "Grower's Exclusive Limited Remedy," which limits Monsanto's liability to "losses, injury or damages resulting from the use or handling of seed," confirm that the agreement and the forum selection clause apply only to disputes concerning seeds.[20]

---

[17]     In *Pullen*, Plaintiffs' Answering Brief is D.I. 9; in *Wade*, it is D.I. 7.

[18]     As this Court noted in denying Monsanto's motion to transfer in *American Seed* because the forum selection clause at issue was permissive, "[o]f course there is the further question of whether American Seed's antitrust claims 'relate' to a Monsanto agreement." *American Seed v. Monsanto*, C.A. No. 05-535-SLR (Dec. 5, 2005 Order), at 5 n.1.

[19]     THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI, (ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO) FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES EXCEPT FOR COTTON-RELATED CLAIMS MADE BY THE GROWER. "Monsanto Technologies" is defined elsewhere in this agreement as "Seed." Decl. Ex. 17 at 1.

[20]     THE EXCLUSIVE REMEDY OF THE GROWER AND THE LIMIT OF LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED CONTAINING MONSANTO TECHNOLOGY (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT OR OTHERWISE) SHALL BE THE PRICE

Second, if there is any ambiguity in the forum selection clauses, it is to be interpreted against the drafter, in this case, Monsanto. *See Intel Corp. v. VIA Technologies, Inc.*, 319 F. 3d 1357, 1363 (Fed. Cir. 2003) ; *Dardovitch v. Haltzman*, 190 F. 3d 125, 141 (3$^{d}$ Cir. 1999). In the absence of a valid and applicable forum selection clause, the ACGA's choice of forum must be honored. *Telcordia Tech, Inc. v. Telkom SA, Ltd.*, 458 F. 3d 172, 180 (3$^{d}$ Cir. 2006). Third, the forum selection clause does not apply because it does not encompass all of the ACGA's claims. Such clauses only apply if the dispute falls within the scope of the clause. *The Jayson Co. v. Vertical Mkt. Software & Vertical Software Servs.*, 2006 U.S. Dist. LEXIS 30638, *6 (D. N.J. May 18, 2006) (citing *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 293 (3d Cir. 1994)). Further, where, as here, the plaintiff's claims extend beyond or are not dependent on the contractual relationship between the parties encompassed by the clause, *see Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir.), *cert. denied*, 464 U.S. 938 (1983), courts have refused to apply a forum selection clause notwithstanding broad language in the clause. *See, e.g., Farmland Industries, Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848, 851-52 (8th Cir. 1986), abrogated on other grounds by *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495 (1989); *Armco, Inc. v. N. Atlantic Ins. Co.*, 68 F. Supp. 2d 330, 338 (S.D.N.Y. 1999); *Smith v. Lucent Techs., Inc.*, 2004 U.S. Dist. LEXIS 4074, *49-57 (E.D. La. March 15, 2004).

Courts have refused to enforce forum selection clauses that were unreasonable or otherwise contrary to public policy. Application of the clause to the ACGA's suit for injunctive relief would

---

PAID BY THE GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES. Decl. Ex. 17 at 2.

contravene public policy by theoretically insulating Monsanto from antitrust remedies, perhaps

including injunction, by virtue of the clause limiting its liability to the price paid for its seeds. *See*

*Mitsubishi Motors Corp v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n. 19 (1985) ("in the

event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of

a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation

in condemning the agreement as against public policy."). Finally, a dismissal or transfer of this

matter would only waste judicial resources. Through its experience with other cases brought against

this defendant, the Court has developed a thorough knowledge and expertise in these matters, which

the ACGA believes would be invaluable in moving these cases expeditiously, thereby significantly

conserving judicial resources and the resources of the parties. As this Court recognized in denying

Monsanto's transfer motion in *American Seed*, the interests of justice are best served by trying the

pending antitrust cases in the same forum – this court.

## CONCLUSION

For the foregoing reasons, the ACGA respectfully requests that defendant Monsanto's motion

to dismiss be denied.

By:  _____

Jeffrey S. Goddess (Del. Bar No. 630)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
jgoddess@rmgglaw.com

*Attorney for Plaintiff ACGA*

20

Additional Plaintiff's Counsel

GARWIN GERSTEIN & FISHER, LLP
Bruce E. Gerstein
Noah H. Silverman
Joseph Opper
1501 Broadway, Suite 1416
New York, NY 10036
Tel: (212) 398-0055
Fax: (212) 764-6620

ODOM & DES ROCHES, LLP
Stuart E. Des Roches
650 Poydras Street
Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078

BERGER & MONTAGUE, P.C.
Daniel Berger
Eric Cramer
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604

Lance A. Harke, Esq.
HARKE & CLASBY, LLP
155 S. Miami Avenue, Suite 600
Miami, FL 33130
Tel: 305-536-8220
Fax: 305-536-8229

KOZYAK TROPIN & THROCKMORTON, P.A.
Adam Moskowitz
T. Tucker Ronzetti
David M. Buckner
2525 Ponce de Leon, 9th Floor
Miami, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508

PERCY, SMITH & FOOTE, LLP
David P. Smith
W. Ross Foote
720 Murray Street
P.O. Box 1632
Alexandria, LA 71309
Tel: (318) 445-4480
Fax: (318) 487-1741

Michael Miller
Law Office of Michael Miller
926 Chulie Drive
San Antonio, TX 78216
Tel: 210-225-6666
Fax: 210-225-2300

Roger C. Bolin, Esq.
BOYLE & BOLIN ATTORNEYS AT LAW
227 E. Court St.
Hennepin, IL 61327
Tel:    815-925-7393
Fax:    815-925-7561

21

## CERTIFICATE OF SERVICE

I, Jeffrey S. Goddess, do hereby certify that on April 9, 2007, I hand delivered and

electronically filed the foregoing document with the Clerk of the Court using CM/ECF which

will send notification of such filing to all registered participants, including:

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> Potter Anderson & Corroon LLP
> P. O. Box 951
> Wilmington, DE 19899-0951

I further certify that on April 9, 2007, I have electronically mailed the documents to

the following:

> Peter E. Moll, Esquire
> John J. Rosenthal, Esquire
> Scott Flick, Esquire
> Howrey LLP
> 1299 Pennsylvania Avenue, N.W.
> Washington, DC 20004
> mollp@howrey.com
> rosenthalj@howrey.com
> flicks@howrey.com

> Kenneth A. Letzler, Esquire
> Jonathan I. Gleklen, Esquire
> Robert N. Weiner, Esquire
> Arnold & Porter LLP
> 555 12th Street, N.W.
> Washington, DC 20004
> kenneth.letzler@aporter.com
> jonathan.gleklen@aporter.com
> robert.weiner@aporter.com

> /s/ Jeffrey S. Goddess
> Jeffrey S. Goddess (Del. Bar No. 630)
> ROSENTHAL, MONHAIT & GODDESS, P.A.
> (302) 656-4433
> jgoddess@rmgglaw.com