# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AMERICAN CORN GROWERS ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 07-100-SLR |
| MONSANTO COMPANY, | ) ) ) | |
| Defendant. | ) | |

## DEFENDANT MONSANTO COMPANY'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND FOR LACK OF SUBJECT MATTER JURISDICTION

OF COUNSEL:

Kenneth A. Letzler
Robert N. Weiner
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
Tel: (202) 942-5000
Fax: (202) 942-5454

Peter E. Moll
John J. Rosenthal
Timothy T. Finley
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Tel: (202) 783-0800
Fax: (202) 383-6610

Dated: April 25, 2007
791633 / 31255

Richard Horwitz (#2246)
David E. Moore (#3938)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Monsanto Company*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iii

PRELIMINARY STATEMENT ....................................................................... 1

I.   THIS CASE SHOULD BE DISMISSED UNDER THE FORUM
     SELECTION CLAUSE IN THE TECHNOLOGY
     AGREEMENTS ATTACKED IN ACGA'S COMPLAINT ................................... 2

II.  ACGA HAS FAILED TO DEMONSTRATE STANDING TO
     BRING THIS ACTION ............................................................................ 5

     A.   A Factual Standing Challenge May Be Entertained At Any
          Time .......................................................................................... 5

     B.   ACGA Has Not Carried Its Burden to Establish Standing to
          Sue............................................................................................ 7

III. ACGA CONCEDES THAT IT HAS NO STANDING TO SUE
     ON ITS OWN BEHALF .......................................................................... 9

IV.  ACGA FAILED TO DEMONSTRATE STANDING TO SUE ON
     BEHALF OF ITS MEMBERS .................................................................. 10

     A.   ACGA Has Not Satisfied the Standing Test Articulated in
          *Associated General Contractors* .................................................. 10

     B.   ACGA Has Not Satisfied the Standing Test Articulated
          Under *Hunt* .............................................................................. 12

          1.   ACGA Has Not Demonstrated that the Action Is
               Germane to the Association's Actual Purpose ......................... 12

          2.   ACGA Has Not Demonstrated That the Conflict
               Among Its Members Would Not Require Their
               Participation In the Action ................................................... 13

V.   THE JURISDICTIONAL DISCOVERY SOUGHT IS
     RELEVANT AND NARROWLY TAILORED ................................................ 15

CONCLUSION........................................................................................ 17

# TABLE OF AUTHORITIES

## CASES

*ARGOS v. Orthotec LLC*,
    304 F. Supp. 2d 591, 593 (D. Del. 2004)........................................................................5

*Associated General Contractors of North Dakota v. Otter Tail Power Co.*,
    611 F.2d 684 (8th Cir. 1979) ...............................................................................10, 11

*Atamian v. Barnhart*,
    C.A. No. 01-663-SLR, 2002 WL 1012942 (D. Del. May 6, 2002) ..............................6

*Battistone v. Sam Jon Corp.*, |
    No. 00-5196, 2002 U.S. Dist. LEXIS 19399 (D. Pa. 2002)...........................................7

*Berardi v. Swanson Memorial Lodge No. 48 of Fraternal Order of Police*,
    920 F.2d 198, 200 (3d Cir. 1990)..............................................................................6, 9

*Blades v. Monsanto Co.*,
    No. 00-CV-4034-DRH, 2001 WL 775980 (S.D. Ill. Jan. 3, 2001) ..............................4

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
    479 U.S. 104 (1986)....................................................................................................10

*Carlough v. Amchem Products, Inc.*,
    10 F.3d 189 (3d Cir. 1993).............................................................................................6

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*,
    709 F.2d 190 (3d Cir. 1983) ..........................................................................................4

*Columbia Gas Transmission Corp. v. Tarbuck*,
    62 F.3d 538 (3d Cir. 1995)..............................................................................................7

*E.I. du Pont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*,
    197 F.R.D. 112 (D. Del. 2000) ......................................................................................7

*Employers Ins. of Wausau v. Crown Cork & Seal Co.*,
    905 F.2d 42 (3d Cir. 1990).............................................................................................6

*Federal Insurance Co. v. Richard I. Rubin & Co.*,
    12 F.3d 1270 (3d Cir. 1993).........................................................................................15

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    885 F.2d 1149 (3d Cir. 1989) ........................................................................................4

*Hunt v. Washington State Apple Advertising Commission,*
 432 U.S. 333 (1977)......................................................................................12, 13, 15

*In re Lucent Technologies Inc. Securities Litigation,*
 No. 2:00-CV-621, 2002 WL 32815233 (D. N.J. July 16, 2002) ..................................16

*In Re Prudential Ins. Co. of Am. Sales Practices Litig.,*
 962 F. Supp. 450 (D. N.J. 1997) ................................................................................16

*Kehr Packages, Inc. v. Fidelcor, Inc.,*
 926 F.2d 1406 (3d Cir. 1991).....................................................................................12

*Kline v. First Western Government Securities, Inc.,*
 No. Civ.A. 83-1076, 1996 WL 122717 (E.D. Pa. Mar. 11, 1996)...............................16

*Kokkonen v. Guardian Life Insurance Co. of Am.,*
 511 U.S. 375 (1994)......................................................................................................1

*KVOS, Inc. v. Associated Press,*
 299 U.S. 269 (1936)......................................................................................................6

*Mansfield, C. & L. M. Ry. Co. v. Swan,*
 111 U.S. 379 (1884)....................................................................................................17

*Massachusetts School of Law at Andover, Inc. v. Am. Bar Ass'n,*
 107 F.3d 1026 (3d Cir. 1997)......................................................................................15

*Massey v. Monsanto Co.,*
 No. 299CV218-P-B, 2000 WL 1146705 (N.D. Miss. June 13, 2000) ...........................4

*Metallgesellschaft AG v. Foster Wheeler Energy Corp.,*
 143 F.R.D. 553 (D. Del. 1992) .....................................................................................7

*Mortensen v. First Federal Savings & Loan Ass'n,*
 549 F.2d 884 (3d Cir. 1977)......................................................................................1, 5

*Nelson v. Keefer,*
 451 F.2d 289 (3d Cir. 1971)....................................................................................8, 15

*Nesbit v. Gears Unlimited, Inc.,*
 347 F.3d 72 (3d Cir. 2003)...........................................................................................6

*Oppenheimer Fund, Inc. v. Sanders,*
 437 U.S. 340 (1978)....................................................................................................15

*Pascack Valley Hospital v. Local 464A UFCW Welfare Reimbursement Plan,*
 388 F.3d 393 (3d Cir. 2004)..........................................................................................9

iv

*Polaroid Corp. v. Disney,*
    862 F.2d 987 (3d Cir. 1988)................................................................................15

*Shahmoon Industries, Inc. v. Imperato,*
    338 F.2d 449 (3d Cir. 1964)............................................................................16, 17

*Torpharm, Inc. v. Pfizer, Inc.,*
    C.A. No. 03-990-SLR, 2004 WL 1465756 (D. Del. June 28, 2004) ............................5

*Turicentro, S.A. v. Am. Airlines Inc.,*
    303 F.3d 293 (3d Cir. 2002)..................................................................................2

*United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.,*
    473 F.3d 506 (3d Cir. 2007)...............................................................................2, 5

*Wyatt v. Syrian Arab Republic,*
    225 F.R.D. 1 (D. D.C. 2004).................................................................................15

## STATUTES

Fed. R. Civ. P. 12 (b)(6)..........................................................................................17

## PRELIMINARY STATEMENT

Plaintiff American Corn Growers Association's ("ACGA") opposition Brief dodges the critical shortcomings of its Complaint raised by Monsanto's Motion to Dismiss. Each of these shortcomings proves independently fatal to the Complaint.

ACGA does not even attempt to argue that it can escape commitments of the Technology User Agreements binding upon the members it purports to represent in this lawsuit. Rather, ACGA falls back to the same arguments advanced in the *Pullen* and *Wade Farms* cases as to why a forum clause encompassing claims connected in any way with the Technology Agreements does not cover this effort to enjoin those Agreements. Monsanto's response here is the same as it was there, that when the forum clause says "Any lawsuit must be filed in St. Louis," it means plaintiff cannot sue in Delaware.

Beyond the forum issue, plaintiff is simply wrong as a matter of law as to when this Court may address ACGA's standing and what it may consider in doing so. The issue of standing is a threshold inquiry that every federal district court is required to undertake in the face of any doubt. Courts in effect presume that they *lack* jurisdiction until the plaintiff – on whom the burden of persuasion squarely lies – proves otherwise by proffering competent evidence to that effect. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside this limited jurisdiction, … and the burden of establishing the contrary rests upon the party asserting jurisdiction").

Given the factual nature of the subject-matter jurisdiction challenge, the Court need not presume the truth of the allegations contained in the Complaint but must "evaluat[e] for itself the merits of [the] jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). The Court should "weigh the evidence relating to jurisdiction" without according any of a plaintiff's allegations a presumption of truth, and in doing so it has "discretion to allow affidavits, documents,

and even limited evidentiary hearings . . . and can look beyond the pleadings to decide factual matters relating to jurisdiction." *Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 300 at n.4 (3d Cir. 2002) (internal citation omitted). Moreover, the Court can engage in that inquiry at any time, including prior to the filing of an answer. *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (affirming District Court's dismissal of action based upon factual challenge to pleading deficiency, where 12(b)(1) motion to dismiss was filed prior to any responsive pleading).

Rather than come forward with actual evidence to support its claim of standing, ACGA submitted a *two-page* affidavit from an outside counsel containing six paragraphs. (D.I. 10). ACGA has not provided a single declaration from an officer or director, much less one of its purported 10,000 members, on whose behalf it now claims it is suing exclusively. While it attacks the quality of the evidence that Monsanto has submitted (without any discovery) bringing into question its standing, ACGA makes no attempt to contradict with sworn testimony or documents that it is in fact an anti-GMO organization or that some, if not most, of its members are organic farmers who do not use glyphosate herbicide systems. In contrast, Monsanto has put forth evidence of ACGA's anti-GMO stance, reflecting the inherent conflict among its members that precludes ACGA from acting in a representative capacity in this action. Therefore, plaintiff lacks standing and this Court lacks federal subject-matter jurisdiction over this action.

I.    **THIS CASE SHOULD BE DISMISSED UNDER THE FORUM SELECTION CLAUSE IN THE TECHNOLOGY AGREEMENTS ATTACKED IN ACGA'S COMPLAINT**

ACGA does not dispute that it is bound by the forum selection clause in the Technology Agreements to the same extent as ACGA members. (D.I. 5 at 12-13) Nor does ACGA deny that, though it is not a party to the Agreement, its close relationship with the parties' contracts subjects it to the forum clause. *See id.* at 13-14. With these points undisputed, the forum issue here is precisely the same as in *Pullen* and *Wade*, and

2

ACGA simply incorporates the growers' briefs filed there. (D.I. 9 at 18)  Thus, if this Court dismisses *Pullen/Wade* – or transfers the cases on the Court's own motion – this case should follow suit.  Monsanto's reply memoranda in *Pullen* and *Wade* explains why in detail.  Therefore, a brief summary will suffice here.

First, the forum clause does not cover only claims involving the purchase and use of "seed." (D.I. 9 at 18)  In plain English, the clause covers claims and disputes "arising out of or connected in any way with" the Agreement and "the use of the seed *or the Monsanto technologies.*" The clause directs further that, "Any lawsuit *must* be filed in St. Louis."  Even if we ignored this language and adopted ACGA's contorted reading, the clause would still encompass ACGA's claims, the core of which are based on the allegation that "Monsanto pursued a systematic licensing and marketing strategy that leveraged its monopoly power in the *seed trait markets* . . . to . . . require growers who wished to plant seeds that contained Monsanto's biotechnology traits to use Roundup herbicide virtually exclusively rather than a competitor's generic equivalent herbicide product." (D.I. 1 at ¶ 65) (emphasis added).

Second, this Court's denial of Monsanto's motion to transfer in the *American Seed* case is inapposite. (D.I. 9 at 18 n.18)  The forum clause in *American Seed* was in **seed company** licenses and stated that disputes "*may* be heard and determined in" Missouri.  The Court held that this language was permissive.  The forum clause here is in the **grower** license.  It states that "Any lawsuit *must* be filed in St. Louis, Mo." (D.I. 9 at 18 n.19)  This language is mandatory.

3

Third, ACGA's argument that the forum clause does not apply to the extracontractual claims (D.I. 9 at 19) here disregards Third Circuit precedent as well as cases applying the very clause at issue to antitrust claims.[1]

Fourth, ACGA asserts that if the forum clause covers antitrust claims, so must a separate remedies provision of the Agreement, which would preclude recovery of antitrust damages and render the contract unconscionable. (D.I. 9 at 18, 19-20) The fallacy is that the remedies provision, unlike the separate forum clause, relates to the "use or handling of seed." On its face, it does not apply to these plaintiffs' antitrust claims, and has no bearing on the interpretation of the forum clause.

Finally, ACGA has not met its burden of proof that enforcing the forum selection clause would "result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *E.g.*, *Coastal Steel*, 709 F.2d at 202. Rather than addressing this standard, ACGA claims that litigation in this Court would be **relatively** convenient because this Court heard *American Seed*. (D.I. 9 at 20) But comparative convenience is insufficient to override the parties' contract. *See id.*; *Hays and Company v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1162 (3d Cir. 1989) (concerns about delay and cost "are not alone sufficient to overcome the policy favoring enforcement of [forum selection] clauses."). Moreover, the Eastern District of Missouri has substantial experience with the issues and technologies presented here. It presides over the thirteen

---

[1]    *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), *abrogated on other grounds*, *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495 (1989) ("If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading."); *Blades v. Monsanto Co.*, No. 00-CV-4034-DRH, 2001 WL 775980, at *4 (S.D. Ill. Jan. 3, 2001) (enforcing forum selection clause in antitrust case and transferring case to Missouri); *Massey v. Monsanto Co.*, No. 299CV218-P-B, 2000 WL 1146705, at *4 (N.D. Miss. June 13, 2000) (holding forum selection clause valid, binding and enforceable in antitrust case).

putative antitrust class actions upon which this case was based and has repeatedly

considered the Technology Agreement. This Court has such experience and expertise as

well. But the contracts here designate Missouri.

## II.    ACGA HAS FAILED TO DEMONSTRATE STANDING TO BRING THIS ACTION

### A.    A Factual Standing Challenge May Be Entertained At Any Time

Rather than coming forward with evidence to demonstrate its standing, ACGA

now argues that the Court is powerless to consider the facts raised by Monsanto because

"'[a] factual jurisdictional proceedings cannot occur until plaintiff's allegations have been

controverted.' That is, not until after the complaint has been answered." (D.I. 9 at 5,

Pl's. Opp. Mem., citing *Mortensen*, 549 F.2d at 892 n.17.)[2]

While an answer may be the most common method to dispute the facts contained

in a complaint, it is not the exclusive means to do so. In multiple decisions subsequent to

*Mortensen*, the Third Circuit has held that fact-based motions to dismiss brought under

Fed. R. Civ. P. 12(b)(1) represent a valid alternative to an answer. *See, e.g., Atkinson*,

473 F.3d at 514 (affirming District Court's dismissal of action based upon factual

---

[2] District courts have distinguished between facial challenges and factual challenges of a complaint. In this context, district courts have declined to go beyond the four corners of the complaint to address factual challenges to a complaint until the factual allegations in the complaint have been controverted. *See, e.g., Torpharm, Inc. v. Pfizer, Inc.*, C.A. No. 03-990-SLR, 2004 WL 1465756, *5 (D. Del. June 28, 2004) ("Because defendants did not answer either plaintiffs' original complaint or their amended complaint, the court shall treat the instant subject matter jurisdiction challenge as a facial attack"), *vacated and remanded on other grounds, Apotex Inc. v. Pfizer, Inc.*, 125 Fed. Appx. 987 (Fed. Cir. 2005); *ARGOS v. Orthotec LLC*, 304 F. Supp. 2d 591, 593 (D. Del. 2004) ("Where the defendants have not filed an answer to the complaint as in the instant case, the attack on subject matter jurisdiction is necessarily considered a facial attack. Under such an attack, the court must accept the allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff."). As discussed below, once a defendant has challenged the factual basis for standing – either by motion or by filing an answer – a district court may look beyond the four corners of a complaint to assess standing.

challenge to pleading deficiency, where 12(b)(1) motion to dismiss was filed prior to any responsive pleading).

In *Berardi v. Swanson Memorial Lodge No. 48 of Fraternal Order of Police*, for example, the Third Circuit held that "a facially sufficient complaint may be dismissed **before an answer is served** if it can be shown by affidavits that subject matter jurisdiction is lacking." 920 F.2d 198, 200 (3d Cir. 1990) (emphasis added). *Berardi* cited the Supreme Court decision in *KVOS, Inc. v. Associated Press*, 299 U.S. 269 (1936), as support for the proposition that a "defendant's pre-answer motion reciting 'facts *dehors* the complaint' was 'an appropriate method of challenging the jurisdictional allegations of the complaint,'" 920 F.2d at 200, and furthermore observed that simple logic dictates this outcome:

> Moreover, the requirement in Fed. R. Civ. P. 12(b) that a motion to dismiss for lack of subject matter jurisdiction must be made 'before pleading if a further pleading is required' would make little sense if the factual basis for subject matter jurisdiction could not be contested until after an answer is filed.  Accordingly, we hold that the district court properly looked beyond the allegations in Berardi's complaint in ruling upon the Lodge's motion to dismiss.

*Id.*

Consistent with Third Circuit precedent, and given the mandate that federal district courts "should determine subject matter jurisdiction at the outset of a case," *Atamian v. Barnhart*, C.A. No. 01-663-SLR, 2002 WL 1012942, *2 (D. Del. May 6, 2002), this Court should[3] entertain the instant standing challenge as a **factual** attack,

---

[3] *See, e.g., Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003) ("[B]ecause subject matter jurisdiction is non-waivable, courts *have an independent obligation* to satisfy themselves of jurisdiction if it is in doubt") (emphasis added); *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 201 (3d Cir. 1993) (district court was obliged to ascertain its own subject matter jurisdiction before issuing injunction); *Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d Cir. 1990) ("[A] federal court is bound to consider its own jurisdiction preliminary to consideration of the merits." (quotation source omitted)).

which in the circumstances of this case appropriately has been brought prior to the filing of an answer.

## B.    ACGA Has Not Carried Its Burden to Establish Standing to Sue

"A party who invokes the jurisdiction of the federal courts has the burden of demonstrating the court's jurisdiction . . . .[W]here a defendant or the court challenges the plaintiff's allegation . . ., the plaintiff who seeks the assistance of the federal courts must produce *sufficient evidence* to justify its claims." *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995) (emphasis added). In *Metallgesellschaft AG v. Foster Wheeler Energy Corp.*, this Court explained why plaintiffs may not simply rely upon the allegations of the complaint in an attempt to satisfy the standing inquiry:

> The factual attack . . . differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. ***In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.***

*Metallgesellschaft AG v. Foster Wheeler Energy Corp.*, 143 F.R.D. 553, 558-59 (D. Del. 1992) (emphasis added).[4]

While ACGA engages in extensive hyperbole regarding the quality and sufficiency of Monsanto's evidence challenging its standing, Monsanto does not have the

---

[4] *See also E.I. du Pont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 119 (D. Del. 2000) (holding that "nonmoving party cannot rely on the allegations of its complaint; it must show the jurisdictional facts *through competent evidence*" in evaluating jurisdiction); *Battistone v. Sam Jon Corp.*, No. 00-5196, 2002 U.S. Dist. LEXIS 19399, *19-20 (D. Pa. 2002) (holding that "prudence dictates that the parties engage in further discovery on the jurisdictional issue," where facts do "not *conclusively prove*" threshold issue of subject-matter jurisdiction) (emphasis added).

burden of proving anything. Its evidence is sufficient to put ACGA's standing in question. In response, AGCA has provided no credible evidence to satisfy the inquiry the Court must undertake. Indeed, in attempting to carry its burden of persuasion it merely musters a *single* two-page affidavit from its Illinois counsel. The affidavit does not even attempt to dispute Monsanto's fact statements and show germaneness, or demonstrate the absence of any conflict among the members of ACGA. Rather, the lawyer's affidavit merely attests to the existence of, and compliance with, ACGA's corporate Bylaws. There is no affidavit or declaration from any board member, no affidavit or declaration from any officer, no affidavit or declaration from any of its purported 10,000 members substantiating the assertions in its opposition or, indeed, in the Complaint.

Nowhere in its opposition does ACGA unequivocally address the crucial questions Monsanto has placed at issue, and nowhere does it state with even a modicum of specificity that it, or indeed any of its grower-members, support or ever have supported the GMO farming methods that are at the heart of the Roundup-based agricultural system at issue here, and that no substantial contingent of its members are organic farmers opposed to GMO farming, including the use of glyphosate. At best, ACGA can proffer the single fact that some "ACGA members buy Roundup . . . ." (D.I. 9 at 4 n.4) This is the high point of specificity offered by plaintiff, and as it is done in a footnote to its opposition and not in a sworn affidavit, it is insufficient to establish any fact. Moreover, it does not show how many ACGA members or what percentage of its members buy Roundup.

Borrowing from the words of the Third Circuit in *Nelson v. Keefer*, 451 F.2d 289 (3d Cir. 1971), in submitting virtually no responsive factual support with its opposition, plaintiff "failed utterly to avail [itself] of this opportunity to bolster the jurisdictional basis of [its] action." *Id.* at 297. Moreover, even if what plaintiff submitted were considered to be "evidence," it is simply insufficient to meet even a preponderance standard applicable to the important threshold jurisdictional inquiry to be undertaken by

the Court. In *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004), for example, the Third Circuit had the opportunity to evaluate a similarly deficient affidavit. There, the plaintiff offered a "broadly declar[atory]" affidavit of a party representative purporting to prove that jurisdiction lay simply because the plaintiff had "'consistently followed the claims and claim review procedures'" contained in its standard operating procedures, arguing – akin to the ACGA here with respect to its bylaws – that this "declaration constitutes evidence of 'routine practice' that supports an inference of" the requisite jurisdictional facts at issue. *Id.* at 402.

The Court of Appeals "disagree[d]," observing that plaintiff failed to mention any pertinent specific facts besides the "'standard procedure for processing claims,'" noting that it did "not even mention the execution of assignments by Plan participants or beneficiaries. As such, [the] certification cannot . . . satisfy the Plan's burden of establishing federal subject- matter jurisdiction by a preponderance of the evidence." *Id. See also Berardi*, 920 F.2d at 200 n.1 (Third Circuit disapproving of "district court's reliance exclusively on the Lodge's constitution and bylaws in deciding whether it represents members.").

## III.   ACGA CONCEDES THAT IT HAS NO STANDING TO SUE ON ITS OWN BEHALF

Apparently in recognition that ACGA, itself, cannot demonstrate standing, it now asserts in its brief that: "The ACGA Is *Not Seeking To Sue In Its Own Right*." (D.I. 9 at 6; emphasis added) This statement stands in stark contrast with the Complaint: "plaintiff American Corn Growers Association (ACGA), brings this action on *behalf of itself* and its nearly 10,000 members . . . ." (D.I. 1 at 1) (emphasis added). If the Court accepts the ACGA's own invitation to take the "the allegations in the complaint . . . as true," then according to the Complaint, ACGA is plainly seeking to sue on its own behalf. In that case, since ACGA has failed to allege any injury to itself that entitles the association to

9

standing on its own behalf, the Complaint should be dismissed with prejudice to the extent ACGA is deemed to be suing on its own behalf. *Associated General Contractors of North Dakota v. Otter Tail Power Co.*, 611 F.2d 684 (8th Cir. 1979) (upholding district court's dismissal of an association's claims filed on its own behalf because, other than conclusory allegations, the organization alleged injury only to its members).

## IV.     ACGA FAILED TO DEMONSTRATE STANDING TO SUE ON BEHALF OF ITS MEMBERS

### A.     ACGA Has Not Satisfied the Standing Test Articulated in *Associated General Contractors*

Plaintiff's opposition would have the Court believe that antitrust-specific standing test enunciated in *Associated General Contractors* is wholly inapplicable since ACGA only seeks injunctive relief. (*See, e.g.*, D.I. 9 at 6)  While courts have recognized that **not all** of the factors from the *Associated General Contractors* test are applicable to the standing inquiry under § 16, it is a great leap from that proposition to plaintiff's claim that **none** of them applies.

Plaintiff's reliance on *Cargill* is instructive in this regard: cases like *Cargill* and its progeny cited by the ACGA focus their analysis entirely on the absence of the "double recovery" problem in § 16 suits, as opposed to those filed under § 4 seeking monetary damages.  While this factor (number five in the *Associated General Contractors* test) is undisputedly absent from the standing analysis under § 16, the remaining four are not necessarily irrelevant.  Indeed, the Supreme Court's observation that "[s]tanding analysis under § 16 will *not always be identical* to standing analysis under § 4," expressly acknowledges the possibility that, on a case-by-case basis, the § 16 analysis may in fact *be* "identical" to that under *Associated General Contractors* as applied to a § 4 case. *See Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 111 n.6 (1986).

No court has ever held, as plaintiff proposes, that in the context of lawsuits seeking only injunctive relief, the *Associated General Contractors* factors are to be

10

disregarded *in toto*. Nor do the cases cited by plaintiff expressly reject the specific factor raised by Monsanto, *i.e.*, the existence of more direct victims of the purported antitrust violation. The standing inquiry outlined in *Associated General Contractors* (decided notably six years **after** the *Hunt* opinion) is thus neither superseded, replaced, nor otherwise rendered irrelevant regardless of whether plaintiff is an individual or an association. Plaintiff has failed to cite a single case to suggest otherwise.

As to this very element (*i.e.*, the "existence of more direct victims of the alleged [antitrust violations]"), ACGA has failed to provide a single fact disputing Monsanto's assertion that it is no more than an association seeking to represent the interests of its grower members who are not only the more direct purported "victims," but who also are plaintiffs in two virtually identical pre-existing putative class actions, alleging that they paid the same artificially-high prices for Roundup because of Monsanto's anticompetitive scheme relating to glyphosate herbicides used in RoundupReady GMO corn seed systems. *Compare Pullen* (D.I. 1, Compl.); *Wade* (D.I. 1, Compl.); *with ACGA* (D.I. 1, Compl.). To the contrary, in attempting to distinguish the holding in *Associated General Contractors* and the applicability of any elements of its standing test, ACGA appears to concede that its members are the more direct "victims": "ACGA alleges harm directly to its members, who purchase Monsanto herbicide and who have suffered the injury . . ." (D.I. 9 at 8, n.7) [5]

The simple fact is that ACGA is not a proper party. The more direct "victims," though indirect themselves, are represented in a purported class by the very same attorneys. The only reason to file this action, therefore, is not to protect the interest of growers, but rather a transparent attempt to evade the contractual obligations of the forum selection clause of the Technology User Agreements – a fact first admitted by counsel,

---

[5] Even the claims of these member "victims" are derivative of alleged injuries to Monsanto's competitors, who would be more direct claimants.

*See Pullen* (D.I. 13, Mot. For Order Setting Scheduling conf., ¶6; *Wade* (D.I. 12, Motion for Order Setting Scheduling Conf., ¶6), and then essentially abandoned in the opposition Brief.

**B.    ACGA Has Not Satisfied the Standing Test Articulated Under *Hunt***

Even under the test for standing that plaintiff claims to be the *sole* test applicable to the facts in issue, *i.e.*, the three-pronged *Hunt* test, ACGA's opposition fails to establish that the association is the proper plaintiff here.

**1.    ACGA Has Not Demonstrated that the Action Is Germane to the Association's Actual Purpose**

While the parties agree that the hurdle to satisfy the second *Hunt* prong of germaneness is relatively undemanding, ACGA has failed to meet even this low hurdle of establishing that the "interests it seeks to protect are germane to the organization's purpose." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). There is a glaring absence in plaintiff's opposition of any evidence whatsoever that an action seeking to enjoin certain licensing and sales practices related to glyphosate-tolerant traits/seeds and the associated herbicides are in the "interests" of its grower members and that such interests are "germane" to the ACGA's purpose. The best it can offer is a single reference to its "overarching organizational purpose" to "promote the interests of farmers throughout the nation," (D.I. 9 at 3), which, notably, is not the organizational purpose it touted to the IRS..

As with all other elements of the inquiry, the burden to establish standing rests on ACGA. This rule applies irrespective of the height of the hurdle it must overcome, as the burden is one of persuasion. *See Kehr Packages, Inc. v. Fidelcor*, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) (affirming dismissal and holding that when "subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.").

If ACGA is little more than an organization that is primarily dedicated to opposing GMO seeds/traits and their related herbicides, then certainly an action designed to enjoin practices that allegedly make it more difficult and more expensive for farmers to use glyphosate resistant traits/seeds and their related herbicides, would hardly be germane to ACGA's or its members' interests. In refusing to provide any evidence relating to the organizations' stance regarding GMO seed systems and related glyphosate herbicides, plaintiff has failed to carry even it minimal burden of persuasion as to the question of germaneness.

*Hunt*'s second prong may be a low hurdle, but it is not superfluous. To accept plaintiff's argument would be to eradicate one of the three limiting factors set out by the Supreme Court in *Hunt*.

### 2. ACGA Has Not Demonstrated That the Conflict Among Its Members Would Not Require Their Participation In the Action

*Hunt* precludes associational standing to the extent this litigation will not be able to proceed without the involvement of individual members, directors, or officers of the plaintiff organization. *See Hunt*, 432 U.S. at 343 ("neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."). Yet, plaintiff dedicates only seven lines of its opposition to the crucial fact issues raised by Monsanto as they relate to the intra-organizational conflict. It declares summarily, without explanation, that even if true, they are "still legally insufficient" to strip the association of its standing. (D.I. 9 at 11-12) ACGA essentially concedes the factual truth of the conflict, but it attempts to persuade the Court that the specter of serious discord among its vast non-GMO grower membership as to this pro-GMO litigation will not diminish its ability to pursue the action *without* the participation of some of them.

ACGA's position is untenable, both factually (as the opposition concedes in its single paragraph addressing the facts) as well as legally (as is evident from plaintiff's

failure to cite a single case of precedential value to this Court, holding that intra-organizational conflict is not an obstacle to associational standing). To begin with, as noted, whatever overheated rhetoric plaintiff directs at the evidence proffered by Monsanto, it was not Monsanto's burden to demonstrate a conflict. The evidence Monsanto cited was sufficient to raise the issue, to require an effective rebuttal, which plaintiff has not provided.

Further, while almost five pages of the opposition are devoted to case law from various district and circuit courts across the country, plaintiff fails to address the guiding Third Circuit precedent cited in Monsanto's opening brief, *Polaroid Corp. v. Disney*, 862 F.2d 987, 999 (3d Cir. 1988), which squarely contradicts ACGA's position.

The Third Circuit could not have stated the applicable rule in this Circuit any clearer when it held in *Polaroid*:

> Although an association may rely on the standing of its members to assert standing for itself by showing that only one of its members has the type of redressable injury that would give it standing to sue individually . . . ***associational standing has never been granted in the presence of serious conflicts of interest either among the members of an association or between an association and its members***.

*Polaroid*, 862 F.2d at 999 (internal citation omitted; emphasis added).

While ACGA may have corralled half a dozen or so cases showing that federal courts in other circuits have occasionally adopted a more lenient standard for intra-associational conflicts, this non-precedential assemblage does nothing more than show that there may be a split among the circuits on the issue.[6] However, the law of this

---

[6] Monsanto is expressing no opinion whether or not such a split actually exists, as it is unnecessary for purposes of this motion to distinguish each of the references to non-precedential decisions contained in plaintiff's opposition. Yet, it is noteworthy that virtually all citations are heavily qualified themselves, as plaintiff admits in its brief. *See, e.g.,* D.I. 9 at 12 ("*it is not clear* that intra-organizational conflict ... is a basis for dismissal."); *id.* at 13 ("associational standing does *not necessarily* depend upon harmony of members' interests.").

Circuit remains as stated in *Polaroid* above, rejecting plaintiff's argument that intra-associational conflict is acceptable under *Hunt*.

Therefore, under the applicable law and on the facts alleged in the Complaint and in Monsanto's opening brief (which remain essentially undisputed by plaintiff's opposition), ACGA cannot proceed with this action without the participation of individual members and thus lacks associational standing under the third prong of *Hunt*.

## V.      THE JURISDICTIONAL DISCOVERY SOUGHT IS RELEVANT AND NARROWLY TAILORED

In the face of ACGA's failure to meet its burden of showing standing, this Court should dismiss this case without the need for discovery. But to the extent the Court deems discovery necessary, Monsanto's proposed discovery is neither "baseless" nor "an attempt to intimidate the ACGA's members." (D.I. 9 at 16) It is not Monsanto that has "fabricated an internal conflict" requiring discovery, but rather ACGA that has failed to proffer evidence demonstrating its standing. (*Id.*) Where subject-matter jurisdiction is at issue, "parties should be granted a fair opportunity to engage in jurisdictional discovery so as to adequately define and submit to the court facts necessary for a thorough consideration of the issue." *Federal Ins. Co. v. Richard I. Rubin & Co., Inc.*, 12 F.3d 1270, 1284 n.11 (3d Cir. 1993).[7]

Plaintiff's recitation of cases in which district courts denied discovery *of absent class-action members* is wholly inapposite to the issue at hand. Plaintiff cannot cite a single case on point prohibiting discovery, much less one with precedential value from

---

[7] *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues"); *Nelson v. Keefer*, 451 F.2d 289, 296 (3d Cir. 1971) (factual inquiry into the existence of jurisdiction permitted); *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Assn.*, 107 F.3d 1026, 1042 (3d Cir. 1997); *Wyatt v. Syrian Arab Republic*, 225 F.R.D. 1, 2 (D. D.C. 2004) ("There is no doubt that jurisdictional discovery is permissible in cases where the defendant challenges the factual basis of the court's subject-matter jurisdiction.").

this Court or the Third Circuit. For example, ACGA's reference to *In Re Lucent Technologies* is misplaced, as that case did not deal with *jurisdictional* discovery at all, but rather with a class-action defendant's ***third*** request for the production of documents at an advanced stage of merits discovery. *See In re Lucent Technologies Inc. Securities Litig.*, No. 2:00-CV-621, 2002 WL 32815233, *1 (D. N.J. July 16, 2002). Similarly, the reference to *In Re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450 (D. N.J. 1997) is wholly inapposite, as it is merely one to a treatise cited in a footnote relating to a discovery dispute where the defendant – unlike the case at bar – "indicated no basis to doubt [plaintiff's] claims." *Id.* at 503. Finally, *Kline v. First Western Gov't Securities, Inc.*, CIV.A. 83-1076, 1996 WL 122717 (E.D. Pa. Mar. 11, 1996) likewise dealt with non-jurisdictional discovery requests of absent "opt-out" class plaintiffs.[8]

If the Court needs to go beyond the papers to resolve any doubts as to the existence of its jurisdiction, Monsanto respectfully requests leave to take limited jurisdictional discovery as outlined in its Memorandum in Support of the Motion to Dismiss. (D.I. 5 at 26-27) While the ACGA has attempted to characterize the discovery sought as unduly broad, certainly the narrowly tailored information Monsanto seeks (about ACGA in terms of its membership, stance on genetically modified technology, and the overlapping nature of the membership to the putative plaintiffs in *Pullen* and *Wade*) can be readily obtained without undue burden to the Association.[9]

---

[8] ACGA's repeated comparisons of its individual members with opt-out class-action plaintiffs is surprising, as it supports Monsanto's fundamental argument that ACGA is *not* representing the best interests of its membership, and that – at best – any aggrieved growers should pursue their interests as individual plaintiffs or as part of the purported class action plaintiffs in the virtually identical *Pullen* and *Wade* actions filed by the same counsel.

[9] An instructive example with direct relevance to this case appears in *Shahmoon Indus., Inc. v. Imperato*, 338 F.2d 449 (3d Cir. 1964), where the fact-based jurisdictional issue on appeal was whether or not diversity existed among the parties. Based upon the somewhat contradictory evidence found in the limited record (which included, as in the case at bar, an *attorney affidavit* purporting to contain facts proving diversity), the Third Circuit Court of Appeals held that the "facts recited are *sufficient to raise doubt* as to the

## CONCLUSION

This case should never have been filed in Delaware, and the Court should dismiss it under Fed. R. Civ. P. 12(b)(6) based on the forum selection clause in the Technology Agreements attacked by ACGA's complaint. Alternatively, ACGA has not met its burden to establish the subject matter jurisdiction of this Court and its complaint should, therefore, be dismissed pursuant to Rule 12. If any question remains as to the issue of jurisdiction, this Court should permit Monsanto to take limited jurisdictional discovery so that the issue of jurisdiction can be resolved "at the outset" of this case.

OF COUNSEL:

Kenneth A. Letzler
Robert N. Weiner
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
Tel: (202) 942-5000
Fax: (202) 942-5454

Peter E. Moll
John J. Rosenthal
Timothy T. Finley
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Tel: (202) 783-0800
Fax: (202) 383-6610

Dated: April 25, 2007
791633 / 31255

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market St.
    Wilmington, DE 19801
    Tel: (302) 984-6000
    Fax: (302) 658-1192
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendant Monsanto Company*

---

accuracy of Shahmoon's counsel's affidavit," thus remanding for "limited … further inquiry by the court below into the jurisdictional facts." *Shahmoon*, 338 F.2d at 451-52 (emphasis added). Permitting both parties to "petition the court below for leave to take such evidence as may be necessary to enable the court below to resolve the jurisdictional issue," the Court of Appeals noted that the *mere doubt* as to the facts contained in a party's counsel's affidavit necessitated such additional jurisdictional discovery, given the rule that evidence giving rise to the district court's jurisdiction must "affirmatively appear in the record . . . ." *Id.* (quoting "landmark decision" of *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on April 25, 2007, the attached document

was hand delivered to the following persons and was electronically filed with the Clerk of

the Court using CM/ECF which will send notification to the registered attorney(s) of

record that the document has been filed and is available for viewing and downloading:

Jeffrey S. Goddess
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
jgoddess@rmgglaw.com

I hereby certify that on April 25, 2007, I have Electronically Mailed the

documents to the following:

Bruce E. Gerstein
Noah H. Silverman
Joseph Opper
Garwin Gerstein & Fisher, LLP
1501 Broadway, Suite 1416
New York, NY 10036
bgerstein@garwingerstein.com
nsilverman@garwingerstein.com
jopper@garwingerstein.com

Stuart E. Des Roches
Odom & Des Roches, LLP
650 Poydras Street
Suite 2020
New Orleans, LA 70130
stuart@odrlaw.com

Adam M. Moskowitz
T. Tucker Ronzetti
David M. Buckner
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Miami, FL 33134
amm@kttlaw.com
tr@kttlaw.com
dmb@kttlaw.com

Daniel Berger
Eric Cramer
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
danberger@bm.net
ecramer@bm.net

Michael Miller
Law Office of Michael Miller
926 Chulie Drive
San Antonio, TX 78216
mdm@mdmlaw.net

Lance A. Harke
Harke & Clasby, LLP
155 S. Miami Avenue, Suite 600
Miami, FL 33130
lharke@harkeclasby.com

I hereby certify that on April 25, 2007, I have sent the documents via U.S. Mail to

the following:

David P. Smith
W. Ross Foote
Percy, Smith & Foote, LLP
720 Murray Street
P.O. Box 1632
Alexandria, LA 71309

Roger C. Bolin
Boyle & Bolin Attorneys at Law
227 E. Court St.
Hennepin, IL 61327

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

783308 / 31255